IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-110-KS

| | | |
|---|---|---|
| AMY L. WEBB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court pursuant to Fed. R. Civ. P. 12(c) on the parties' cross motions for judgment on the pleadings [DE # 25 & 27], the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Plaintiff Amy L. Webb filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for disability insurance benefits. The parties have fully briefed the issues, and the pending motions are ripe for adjudication. On February 19, 2015, the court held oral argument in the matter. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties and considered the arguments of counsel. For the reasons set forth below, the court grants Plaintiff's Motion for Judgment on the Pleadings, denies Defendant's Motion for Judgment on the Pleadings and remands this matter to the Commissioner for further proceedings.

**STATEMENT OF THE CASE**

Plaintiff applied for disability insurance benefits on August 7, 2010, alleging disability beginning June 17, 2010. (Tr. 19.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (*Id.*) On July 19, 2012, a hearing was held

before Administrative Law Judge Edward Bowling ("ALJ"), who issued an unfavorable ruling on August 17, 2012. (Tr. 12.) Plaintiff's request for review by the Appeals Council was denied December 27, 2013, making the ALJ's decision the final decision of the Commissioner. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision.

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "'In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].'" *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler,* 715 F.2d 148, 150 (4th Cir. 1983).

## II. Disability Determination Process

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 74 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. (Tr. 20.) At step one, the ALJ found Plaintiff had not been engaged in substantial gainful employment since the alleged onset date. (Tr. 21.) Next, he determined that Plaintiff had the following severe impairments: obesity, rheumatoid arthritis, psoriasis, intermittent bradycardia and mild osteoarthritis. (Tr. 215.) However, at step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff had the ability to perform a reduced range of light work.

3

Specifically, the ALJ determined that Plaintiff could "frequent[ly] but not constant[ly] use [her] bilateral upper extremities for fine and gross manipulations" but should "never climb ladders, ropes, or scaffolds" and should "avoid concentrated exposure to hazards." (Tr. 23.) The ALJ further determined that Plaintiff was able to perform past relevant work as a help desk representative as generally performed. (Tr. 28.) Alternatively, he made step-five findings, determining that based upon Plaintiff's age, education, work experience and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform – cashier II, housekeeper, and sales attendant. (Tr. 29.)

## IV. Plaintiff's Contention

Plaintiff's sole assignment of error is that the ALJ improperly evaluated the medical opinion of Plaintiff's treating rheumatologist, Dr. Maria Watson. (Pl.'s Mem. Supp. Mot. J. Pleadings [DE #26] at 6-8.) Plaintiff contends that Dr. Watson's opinion is consistent with her treatment notes and the other evidence of record and should have been given greater weight.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). A medical source's opinion that a claimant is "disabled" or "unable to work" concerns a matter reserved to the Commissioner and is, therefore, not entitled to any special significance. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). Nevertheless, such opinions must be considered, together with all other evidence, and may not be disregarded or ignored. *Id.*

Generally, a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician, but the court is not required to give the testimony controlling

4

weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is entitled to controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2). Thus, the ALJ has the discretion to give less weight to a treating physician's opinion in the face of contrary evidence. *Mastro*, 270 F.3d at 178.

If not entitled to controlling weight, a treating physician's opinion must be assessed in light of the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) any specialty or expertise of the treating physician; and (6) any other factors tending to support or contradict the physician's opinion, such as the extent of the physician's understanding of the Social Security disability programs and the physician's familiarity with other information in the record. 20 § C.F.R. 404.1527(c); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011). The ALJ's "decision must contain specific reasons for the weight given to the treating source's opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(c)(2).

In support of her application, Plaintiff presented a medical source statement dated May 7, 2012, from her treating rheumatologist, Dr. Maria Watson. (Tr. 454-55.) In that statement, Dr. Watson indicated that Plaintiff has active rheumatoid arthritis, with a history of joint pain, swelling and tenderness, morning stiffness, and limitation of motion in her wrists, as well as psoriasis. Dr.

5

Watson reported that Plaintiff's condition causes her significant fatigue and malaise and that Plaintiff has moderate limitations in her activities of daily living and mild deficiencies in social functioning and concentration. (Tr. 455.) With regard to Plaintiff's functional abilities, Dr. Watson opined that Plaintiff is able to stand for fifteen minutes and sit sixty minutes at a time; can lift ten pounds occasionally and five pounds frequently; should never bend or stoop; can only occasionally manipulate with her hands, whether fine or gross; and should never raise her arms above shoulder level. (Tr. 455.) Dr. Watson further explained that while Plaintiff's rheumatoid arthritis "is better than it used to be," she has significant pain that limits her functional abilities. (Tr. 455.)

The ALJ found Dr. Watson's opinions unsupported by the evidence of record and, consequently, discounted her opinions. The ALJ reasoned that "[t]he record shows that although [Plaintiff] continues to report pain and tenderness in all joints, no synovitis is noted. In addition, Dr. Watson even notes in her opinion that [Plaintiff's] rheumatoid arthritis is improving." (Tr. 27.)

Plaintiff contends, and the court agrees, that the ALJ's reasoning is not an accurate representation of Dr. Watson's medical opinion. Dr. Watson's opinion was that although Plaintiff's rheumatoid arthritis had improved to some degree, she continues to experience significant pain that limits her functioning. Dr. Watson did not make any correlation between synovitis and Plaintiff's pain, nor did she suggest that Plaintiff's rheumatoid arthritis was continuing to improve. The pain experienced by Plaintiff' as a result of her rheumatoid condition is well documented throughout the relevant time period, with evidence of tenderness to palpation of many affected joints at clinical examinations. (*See, e.g.*, Tr. 374, 400, 404, 408, 412, 452.) A February 2011 visit notes an abnormal joint exam, with "tenderness in her bilateral shoulders,

6

elbows, wrists, MCP, PIP, DIP joints, knees, ankles." (Tr. 374.) A neurological consult in April 2011 noted chronic pain at the mid to high end of the pain scale, with diffuse discomfort. (Tr. 394.) After Tramadol was discontinued due to seizures, Plaintiff experienced an increase in her pain and stiffness. (Tr. 398, 402.) In May 2011, Plaintiff was noted as having joint pain at multiple sites, without synovitis. Plaintiff received an injection for pain in her left trochanteric bursa in July 2011. At that time, Dr. Watson noted that she "has some pain with the joints secondary to the [rheumatoid arthritis] but may have some general pain as well." (Tr. 405.) A physical examination in January 2012 revealed nine positive tender points, and tenderness in her knees, right shoulder, right elbow, wrists and DIP, PIP, and MCP joints. The treatment record from that visit states: "She has multiple joint pain but no active synovitis. I suspect she has secondary fibromyalgia." (Tr. 412.)

Although not entirely clear from the ALJ's decision, it appears as though the ALJ may have required Plaintiff to produce objective medical evidence to support her claim (and Dr. Watson's opinion) of disabling pain. In this regard, the ALJ stated:

> While the claimant alleges disabling limitations due to her impairments, the objective medical evidence fails to support such a finding in this case. The record shows that although the claimant complains of arthritic pain in all joints, no synovitis has been noted on examination and no adverse side effects to the claimant's medication regimen have been demonstrated. . . .

(Tr. 26.)

The law is well settled in the Fourth Circuit that an ALJ may not require objective evidence of a claimant's pain where objective medical evidence establishes the existence of some condition or impairment that could reasonably be expected to have produced the pain alleged. *See Craig*, 76 F.3d at 592-593 ("[W]hile a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, 'there need not be objective evidence of

7

Case 5:14-cv-00110-KS   Document 38   Filed 03/24/15   Page 7 of 8

the pain itself.'" (quoting *Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir. 1986))). In this case, the ALJ found the existence of a medically determinable impairment that could reasonably be expected to cause Plaintiff's symptoms. (Tr. 23.) Thus, it would have been error to require objective medical evidence substantiating Plaintiff's pain or its intensity. *Id.* at 593.

Having carefully considered the matter, the court is unable to say that the Commissioner's decision is based on the proper legal standards and supported by substantial evidence. Accordingly, this matter is remanded to the Commissioner for further consideration.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings [DE #25] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #27] is DENIED and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

This 24th day of March 2015.

*Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge